53 So.2d 161 (1951)
GOODWIN
v.
DEPARTMENT OF HIGHWAYS.
No. 7670.
Court of Appeal of Louisiana, Second Circuit.
May 30, 1951.
Rehearing Denied June 29, 1951.
*162 Jack L. Simms, D. Ross Banister, W. Crosby Pegues, Jr. and Joseph A. Loret, all of Baton Rouge, for appellant.
J. B. Nachman, Alexandria, for appellee.
KENNON, Judge.
This is a suit by Hazel D. Goodwin against the Department of Highways of the State of Louisiana to recover damages as the result of the violent death by drowning in Red River of her then husband, Noel E. Duling, on the night of December 23, 1946. Her petition sets forth that the State of Louisiana by Act 332 of the 1948 legislature had waived its immunity and authorized plaintiff to institute suit against the Department of Highways.
The petition recited that the Louisiana Highway 57 running northward from Marksville in Avoyelles Parish to Alexandria, Louisiana, is a modern concrete highway, eighteen feet in width; that in April, 1945, the Moncla Bridge, over which this highway crosses Red River, was destroyed by high water so that the entire span on the south end of the bridge was washed away; that as a result Louisiana Highway 57, on the night of December 23, 1946, and for many months prior thereto, ended abruptly at the bank of Red River, with an almost perpendicular drop of twenty feet or more to the deep and swift waters of the Red River below. The negligence charged was that there was no sign, warning or barricade of any nature, except a barricade only twenty-one feet nine inches from where the concrete slab ended with the twenty foot perpendicular drop into the waters of Red River below. The petition recited that *163 a concrete block three by three by four feet was in the left-hand traffic lane, but no warning other than the above mentioned fence-barricade on the brink of the river existed on the right side, and that plaintiff's husband, rounding the leftward curve and traveling on the other lane of traffic, could not see the concrete block in the left traffic lane. Alleging that the lone fence-barricade was black in color and was not visible at night, and that the highway curved perceptibly from a point three hundred thirty yards back from this fence, plaintiff asserted that the driver of an automobile on this public highway would approach the point where the highway ended at the river's bank without timely knowledge of the existence of the abrupt ending or the black fence barricade. The petition recited that it was gross negligence on the part of the defendant, and utter disregard of the safety of the traveling public using the modern concrete highway, for defendant to fail to erect and keep in a proper state of repair barricades and signs warning users of the road that the Moncla Bridge was out and of the existence of the abrupt highway ending over the deep waters of Red River.
The petition further recited that after the death of plaintiff's husband, the defendant recognized the hazard and placed proper barricades, three in number, one three quarters of a mile from the banks of the river, the second a half mile, and the third nearer to the end of the concrete slab.
Defendant, after its exception to the jurisdiction, its exception of immunity from suit, and its exception of immateriality had been overruled, filed an answer admitting that the bridge in question was destroyed, and setting forth that traffic on the highway in question had been crossing Red River at this point by means of a ferry. The answer recited that the condition of the highway for more than one thousand feet from the river was such as to indicate to an approaching motorist that the road was not in use. The answer admitted the existence of a curve in the highway on the Moncla side of the river. The answer stated that defendant had placed signs "some distance back" from the river notifying the public that the bridge had been destroyed, that the road was closed, and that "all of said signs remained along said highway as so placed from the time they were so placed along said highway until after the said alleged time of said alleged accident." In addition to the signs, the answer recited that the joint of concrete pipe with headwall had been placed in the left lane as a warning to the public.
The answer admitted that after the "alleged time of said alleged accident" defendant placed an additional barricade across the road. The answer denied the existence of any person by the name of Noel E. Duling; denied that the alleged accident ever happened and denied that any person by that name was ever killed, but pleaded in the alternative, and in the event the Court should find that there was actually a person by that name, and that he was killed as alleged, that such person was guilty of contributory negligence in failing to keep a proper lookout; in failing to notice and heed the barricade; in failing to note the unused condition of the road, and in driving his automobile into Red River.
The District Judge, in a written opinion, after noting that a state trooper and the sheriff, both of whom investigated the accident immediately after its occurrence and remained in the locality until after the car was dragged from the river and the bodies were removed at approximately 10:30 the next morning, had each testified that the only barricade or warning in the right lane was the barricade of creosoted planks built to resemble a fence across the highway at a point twenty-one feet nine inches from the end of the concrete slab which projected over the banks of the river, and that there were no other visible signs or warning on the road except this fence and the concrete slab on the left side, concluded that the preponderance of the testimony showed that there were not sufficient warnings to the traveling public and described the situation on the brink of Red River on the winter night in question as a "veritable death trap." From the *164 District Court's judgment in favor of plaintiff for $5,600, defendant prosecutes the present appeal.
Act 332 of 1948 specifically authorized the present plaintiff to institute suit against the State of Louisiana through the Department of Highways for damages resulting from the death of her then husband on December 23, 1946 "by the negligence of a person, or persons in the employ of the Department of Highways of the State of Louisiana, in failing to erect and maintain a proper barricade as notice to the public that the highway abruptly ended at the banks of Red River, after the destruction of the Moncla Bridge." The act further authorizes the suit either before the District Court at the state capitol or of the Parish of Avoyelles. Consequently, the District Court correctly overruled the defendant's exception of immunity from suit and its exception to the jurisdiction of the court.
Louisiana Highway No. 57 from Marksville to Alexandria, on the south side of Red River, consists of an eighteen foot slab of concrete with the usual shoulders. In April, 1945, the Moncla Bridge over which this highway traversed Red River was destroyed by high water, the entire span on the south side being washed away. The current continued to eat away the bridge approach so that on the night in question the concrete slab projected over the bank of Red River with a perpendicular drop of some twenty feet to deep and swift waters below. As this concrete highway approaches this washed out bridge site, there is a five and one-half degree curve to the left and a slight upgrade. Although the accident occurred more than a year and a half after the bridge span had been washed away, the only sign visible to one traveling the right lane of this highway on the fateful night was a fence consisting of some used three inch by ten inch creosoted bridge timbers in position just twenty-one feet nine inches from the end of the concrete slab. Defendant had placed a warning sign, "Barricade Ahead," at a point some distance back where the ferry road left the concrete slab. However, on the night in question this sign was not in place, and the only indication on the highway, other than the above described fence, was the piece of concrete pipe approximately near the center of the left lane of travel at a point some three hundred thirty yards from the river bank.
The accident occurred about eight o'clock at night when the Pontiac automobile driven by plaintiff's deceased husband, traveling at a speed not shown to be excessive, continued past the ferry road, where the barricade sign was lying face down, and on around the 1350' curved concrete road, crashing into the black board barricade and skidding over the abrupt end of the concrete, and falling into the swift waters below, where plaintiff's husband and an unidentified woman companion met death by drowning.
The Sheriff of Avoyelles Parish, a state highway trooper, and others came to the scene of the tragedy soon after it happened, and efforts were continued throughout the night to locate the submerged automobile. However, due to the swiftness of the current and depth of the water, it was not until mid-morning of the following day that the rescuers, with the help of a trained firemen's rescue crew from the City of Monroe, managed to pull the automobile from the water and remove from it the two bodies, one positively identified as that of plaintiff's deceased husband.
The sheriff, trooper and other witnesses testified that a warning sign indicating a barricade ahead had been placed on the shoulder of the highway some distance south of the bridge site where vehicles turned off the slab to the ferry. These two officers and all other witnesses agreed that, on the night of the accident, this sign had fallen down, or had been knocked over, and was lying on the ground face down.
This Court recently held in the case of Rosier v. State of Louisiana, La. App., 50 So.2d 31, that when the state has waived its immunity from suit, the Department of Highways must respond in damages where its employees have failed in their duty to provide and maintain warning signs and barricades sufficient to warn the public of a situation calculated to *165 cause death to the occupants of a vehicle who proceed unwarned into the danger which the responsible highway employees know to be in existence. In the case at bar, the abrupt ending of the concrete highway with the precipitous drop into the deep waters of the Red River was even more dangerous than the flooded condition of the highway at the end of the bridge in the Rosier case. In that case, as in the present one, the preliminary warning sign placed by the employees of the highway commission had fallen down and was not in place at the time the doomed driver made his night approach. For the Department of Highways to fail to erect a substantial and permanent warning sign and barricade at a safe distance from what might be literally described as the "jump off place" is plainly negligence. The placing of the piece of concrete culvert pipe with its four foot headwall in the left lane of the highway three hundred thirty yards from the abrupt ending was not a sufficient warning of the danger ahead to one traveling at night on the right side of the road. While not relevant to decision of this case, it is noted that adequate barricades of a permanent type were put in place after the fatal accident.
Having found the defendant guilty of negligence in failing to erect and maintain a proper barricade, the only other question to be considered is whether plaintiff's deceased husband was guilty of contributory negligence in not observing the black fence barricade in time to stop. The courts of Louisiana have held that a driver of a vehicle must proceed on the road at night with caution, and should observe such a lookout and keep his vehicle under such control as to be able to timely stop same when his headlights reveal the ordinary hazards which may be expected on a road. In accordance with this ruling, drivers who have crashed into disabled vehicles occupying the drivers' right lane have been held guilty of contributory negligence. However, when the hazard is unusual in nature and not readily discernible, the drivers running into same have not been held guilty of contributory negligence. Gaiennie v. Cooperative Produce Company, Inc., 196 La. 417, 199 So. 377; Rea v. Dow Motor Company, La.App., 36 So.2d 750.
In the case before us, the hazard was an unusual one, the barricade was not of the black and white easily discernible type, there were no reflectors on it, and its bulk was not well defined. There was a curve to the left which caused the headlights of the car not to reveal the barricade or open condition of the road until the driver was close upon it. Under these circumstances, we find that the defendant has not shown that plaintiff's deceased's husband was guilty of contributory negligence.
The District Court, doubtless taking into consideration the fact that plaintiff remarried some eleven months after the loss of her husband, gave an award to her (including funeral expenses) of only $5,600.00. This is one of the few cases which we have considered in which neither side in brief has complained of the amount awarded.
The judgment appealed from is affirmed. Defendant to pay stenographer's costs as required by Act 135 of 1936, LSA-RS 13:4521.