183 So.2d 670 (1966)
Mrs. Gabriel GROS
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 6588.
Court of Appeal of Louisiana, First Circuit.
February 28, 1966.
*671 Baron B. Bourg, Houma, for appellant.
Elton A. Darsey, Claude B. Duval, Houma, for appellee.
Before R. S. ELLIS, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
LANDRY, Judge.
Plaintiff herein, Mrs. Gabriel Gros, prosecutes this appeal from the judgment of the trial court rejecting her demand for damages for personal injuries sustained when the automobile in which appellant was riding as a guest passenger, *672 a vehicle owned by one Thomas Teekell but being operated at the time by appellant's husband, Russell Gros, collided with the rear of a vehicle parked upon a public highway at night in its proper lane of travel but without lights. The sole defendant from whom plaintiff seeks recovery is United States Fidelity and Guaranty Company, the liability insurer of plaintiff's aforenamed husband.
In substance plaintiff's petition alleges her host driver was negligent in not driving around the parked vehicle, failing to exercise reasonable diligence by stopping his vehicle in time to avoid a collision, neglecting to keep his vehicle under proper control, failing to maintain a proper lookout and driving while intoxicated.
Defendant maintains its insured was free of negligence in that he allegedly was confronted with an emergency in the form of a vehicle parked upon the traveled portion of a public highway at night without lights but nevertheless took reasonable steps to avoid a collision. Alternatively, appellee contends appellant was contributorily negligent in knowingly riding with an intoxicated driver.
Our learned brother below resolved the issue by concluding Mr. Gros was intoxicated at the time of the accident to such extent as to impair his sense of perception, and that plaintiff, being aware of this circumstance, was contributorily negligent in riding with a driver known to be inebriated.
The virtually undisputed facts reveal that on the night of November 2, 1957, between the hours of 8:00 and 9:00 P.M., Mr. and Mrs. Teekell picked up Mr. and Mrs. Gros in Houma, Louisiana, and proceeded to an establishment known as College Inn, situated in Thibodaux, Louisiana, arriving there at approximately 9:00 P.M. The two couples remained at the College Inn until midnight during which interval they admittedly consumed a fifth gallon of whiskey. Mr. Gros who had worked all the previous night, and was not feeling well because of either a cold or influenza, had only three drinks within the interim noted. The rest of the bottle was concededly shared by the remaining members of the party in more or less equal portions. Upon leaving the aforesaid establishment it was the concensus of the group (with the possible exception of Mr. Teekell), that Mr. Teekell was was in no condition to drive. At the suggestion of the other members of the party, Mr. Teekell sat on the back seat of the automobile accompanied by his wife while Mr. Gros proceeded to drive the vehicle with plaintiff seated beside him on the front seat.
When plaintiff's husband reached a community known as Schriever he stopped at a restaurant for something to eat but found the establishment closed. He then proceeded southerly along State Highway 24 at a speed of approximately 40 miles per hour in his proper lane and, after having traveled thusly for a distance of about one-quarter of a mile, was involved in the accident hereinafter described.
Meanwhile, Ronnie J. Delcambre, a young man, was driving southerly along the same highway accompanied by some female companions when his vehicle was overtaken by a car driven by 16-year-old Joseph Pisani, who stopped his automobile on the highway directly in the path of the Delcambre vehicle. Delcambre then stopped his vehicle on the highway behind the Pisani automobile, with all four wheels on the traveled portion of the roadway. Pisani testified his purpose in stopping was "to have a few words with the boy behind me" and that after stopping he walked from his car to the driver's side of the Delcambre car to speak to the driver. The record establishes conclusively that the lights on the Delcambre vehicle were turned off but the reason for this unusual circumstance does not appear from the testimony. While Pisani was speaking to Delcambre he noted the headlights of the Gros vehicle approaching from the rear. Pisani ran "out in the road" and waved his arm to warn the *673 approaching car, but realized it was not going to stop and immediately ran to the shoulder of the highway to avoid being struck. The front of the approaching vehicle driven by Mr. Gros struck the rear of the parked, unlighted Delcambre automobile.
In effect Mr. Gros testified that upon leaving Schriever he proceeded at a speed of about 40 miles per hour. When a car approaching him from the other direction blinded him, he dimmed his lights, and after passing the oncoming car, he immediately put on his bright lights and observed the Delcambre car stopped in the road approximately 200 feet ahead. He attempted to pass the stationary vehicle but observing Pisani in the passing lane veered sharply to his right and tried unsuccessfully to stop.
The accident occurred more than two years prior to trial, which perhaps accounts for the fact the testimony of the various witnesses is not as clear and precise as desirable. Mrs. Gros apparently sustained a traumatic amnesia as a result of her injuries as she was unable to recall any of the events and circumstances immediately preceding the collision. Mr. Teekell, admittedly "tight but not drunk", deemed by his acquaintances too inebriated to drive, testified that just before the emergency arose Mr. Gros turned his head to the rear to speak to the Teekells and that he, Mr. Teekell, observed the danger posed by the unlighted automobile stopped upon the highway and warned Mr. Gros. In this respect Mr. Teekell was corroborated by his wife who conceded she had been "tight" during the course of the evening, but that the effects of the alcohol had worn off before the homeward journey commenced.
Learned counsel for appellant vigorously maintains the evidence of record does not justify the conclusion Mr. Gros was intoxicated or under the influence of alcohol sufficiently to affect his ability to drive and the trial court erred in holding otherwise. In this connection, however, appellant is hoist on her own petards considering Article 11 of her petition alleged the following:

"11
That the said Russell Gros was also negligent in that he was operating the vehicle belonging to Thomas Teekell, as aforesaid, while in an intoxicated condition, the said Russell Gros having been in a night club drinking in company with other persons for some time immediately prior to the collision."
A declaration, such as the foregoing, made in a judicial proceeding is a judicial confession, irrevocable unless made through an error of fact. LSA-C.C. Art. 2291; Coleman v. Jones & Pickett, 131 La. 803, 60 So. 243; Prieto Lumber Co. v. Shoultz, La.App., 111 So.2d 857. No effort was made to amend the petition, and plaintiff does not urge the delegation was made in error as indeed she cannot considering she still predicates her claim alternatively upon the alleged inebriation of her host driver.
For reasons which will hereinafter appear we deem the following language appearing in McAllister v. Travelers Insurance Co., La.App., 121 So.2d 283, particularly appropriate to the case at bar:
"We fully agree with learned counsel for plaintiff that inebriation per se may not be considered the proximate cause of every accident in which an intoxicated driver may become involved. We can readily conceive of numerous circumstances under which a drunken driver might become involved in an accident the cause of which is totally unrelated to the fact that the driver was operating his vehicle while under the influence of intoxicants. Whether or not intoxication is a contributing or proximate cause of any accident is purely a question of fact to be determined after full consideration of all the circumstances of each individual case."
*674 We deem of considerable significance the fact that in testifying at the trial below both Gros and Teekell estimated the distance at which the presence of the parked, unlighted Delcambre vehicle was first noted at approximately 200 feet. However, in a written statement made shortly after the accident, Teekell estimated the distance as being between 75 and 100 feet. We further observe that his testimony in court fixing the distance at 200 feet was based on a measurement made more than two years following the accident, shortly before trial. He conceded that in the intervening period the highway in question had undergone considerable improvement but maintained he recalled the correct position of the automobile by relating it to a utility pole along the highway right of way. It is to be further noted, however, that Mr. Gros in estimating distances in court, considered an object only 80 feet distant to be 200 feet away.
It is the settled jurisprudence of this state that the rule requiring a motorist traveling on the public highways after dark or under circumstances limiting his visibility, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume the road is safe for travel even at night. The foregoing exception, however, is itself subject to the exception that a motorist traveling at night is not charged with the duty of guarding against striking an unusual or unexpected obstruction which he had no reason to anticipate he would encounter on the highway. Thus in Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909, involving circumstances remarkably similar to those in the instant case, a motorist traveling after dark at a lawful rate of speed was exonerated from liability for striking an unlighted vehicle parked in his lane of travel. For other cases reaching similar results see Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720.
In Suire v. Winters, 233 La. 585, 97 So.2d 404, which involved a motorist striking a parked, unlighted cane truck at night, the Supreme Court laid down the following applicable rule:
"In determining whether plaintiff was contributorily negligent in failing to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule can be laid down, but the surrounding circumstances and facts bearing on this particular case necessarily must be considered. The duty to use reasonable care for the safety of others places the operator of a motor vehicle under continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road as required by statute or dictated prudence. However, although it is the duty of a motorist to have his car under such control that he can bring his vehicle to a stop within his range of vision, the standard the law gives us to apply is that to be exercised by a reasonably prudent motorist under a given set of facts and circumstances then prevailing and not that exercised by imaginary ideal motorists."
Applying the foregoing pertinent rules of law to the facts of the instant case, and assuming Gros' inebriation, as we must in view of appellant's aforesaid judicial confession, we nevertheless conclude Gros was not guilty of any negligent act or omission proximately causing the accident in question.
Irrespective of Gros' condition, the evidence conclusively establishes he was proceeding at a lawful rate of speed in his proper lane of travel with his automobile *675 under control. We find the evidence preponderates in favor of the conclusion that Gros observed the parked vehicle when he was only about 75 to 100 feet distant therefrom but that his failure to sooner note its presence is a matter of no moment under the circumstances. Gros was entitled to assume no unlighted vehicle would be left on the traveled portion of the highway at night. That he was keeping a proper lookout and was at least as alert as the average driver exercising ordinary care is attested by the fact that he observed the parked vehicle at the first possible moment, namely, after the lights of the oncoming car no longer blinded his vision. It also appears his reaction to the emergency was both immediate and reasonable under the circumstances. He first intended to pass in the left or passing lane which maneuver he undoubtedly would have accomplished but for the presence therein of the Pisani lad. His decision to attempt to stop rather than run down an individual standing in the path he intended to travel is likewise that of a reasonably prudent person. Our careful consideration of the record impels the conclusion that whatever Gros' condition, his operation of his vehicle and reaction to the totally unexpected emergency, even if perhaps by accident, nevertheless discharged every burden of care incumbent upon him. We can conceive of nothing further which Gros or any other driver could have done under the same circumstances to avoid an accident. Drunk or sober, his conduct was in this particular instance that of a reasonably prudent and careful driver, keeping a proper lookout, having his vehicle under control and reacting diligently and reasonably to a sudden, unexpected emergency.
Defendant's insured being without fault with respect to the accident, appellee is not liable in damages to appellant.
Accordingly, the judgment is affirmed at appellant's cost.
Affirmed.