YELVERTON, Judge.
This appeal is from a finding that the State of Louisiana, Department of Transportation and Development (DOTD), was not a tortfeasor in a highway accident in which Debra Littleton, appellant, was injured. The accident, a head-on automobile collision, occurred in Avoyelles Parish, on March 5, 1983. Debra Littleton was a passenger in a car driven by Raymond Piazza. Tammy Williams was the driver of the other car. Two suits were filed, one by Piazza against Williams and the DOTD, and the other by Littleton against Piazza, Williams, and the DOTD. The trial judge, concluding that the negligence of Tammy Williams was the sole cause-in-fact of the accident, rejected the demands against the driver, Piazza, and the DOTD. Only Littleton has appealed. We affirm.
The liability of the DOTD is the only issue on appeal. We have studied the record and the trial court’s reasons for judgment, and we agree with the trial court that the DOTD is not liable. We find that the trial judge’s excellent reasons for judgment are so thorough and so dispositive of all arguments that we adopt them as our own:
“The issue of Williams’ negligence is not disputed. The only issue to be decid *1161 ed is whether the Highway Department is guilty of any negligence which caused damage to Debra Vance Littleton and/or Raymond W. Piazza, Jr.; Debra Vance Littleton and Raymond W. Piazza, Jr. will be referred to jointly hereinafter as ‘the plaintiffs’.
“Plaintiffs contend that the shoulder of the highway at the scene of the accident was too narrow and the slope was too great to permit the vehicles safely to travel on them when necessary to do so. They contend that if the shoulders had been as wide as recommended by current highway standards, that Piazza could have avoided the accident by pulling off onto the shoulder.
“The position of the Highway Department is first, that the shoulders are not defective so as to constitute negligence on its part and secondly, that the collision would have occurred irrespective of the width or slope of the shoulders.
“Piazza testified that he was driving about 50 miles an hour at the time of the accident and that the Williams vehicle was about 200 feet away when it began crossing over into his lane. He said he veered to the right, thinking the Williams vehicle would pull back to its proper lane. He testified further that the right wheels of his vehicle went off the travelled portion of the highway and onto the shoulder and that he felt he could have avoided the accident if there had been two or three feet more of shoulder.
“Harold Palmer’s testimony was similar to that of Piazza except that he estimated that the Williams vehicle was between 150 and 200 feet away from the Piazza vehicle when it veered over into Piazza’s lane of traffic.
“Wayne Evans, a traffic consultant and engineer, testified as an expert witness for the plaintiffs. He examined the scene of the accident and took measurements. He testified that the shoulder of the highway at the point of the accident was not in accordance with present highway standards because it was too narrow and too sloped. He observed that the travelled portion of the highway was widened from eighteen to twenty-four feet in 1952 or 1953, thereby narrowing the shoulder on each side. He said that based on Piazza’s testimony as to how the accident happened, that there was reason to believe that Piazza may have been able to avoid the accident if the shoulder had been wider and had a lesser degree of slope. He did not testify that it was his opinion that the width or slope of the shoulder was a cause of the accident.
“Joseph Blaschke, a civil engineer holding masters and doctors degrees and who has had extensive training and experience in traffic engineering and accident reconstruction, testified as an expert witness for the Highway Department. He reviewed the construction history of Highway 71 at the location of the accident and he reviewed the scene of the accident prior to trial. He explained that the highway was built in 1930 with the travelled portion being eighteen feet wide with six foot shoulders. The highway was widened in 1952 to twenty-four feet. He said the entire road bed was widened at that time and the entire six feet of widening was on one side. He explained that it is required that the standards existing at the time of reconstruction must be complied with but that the improvements to Highway 71 done in 1952, 1965, and 1978 were improvements only and not reconstruction. He said that while it would be preferable to have wider shoulders on all highways, that the present 6-7 foot shoulders on Highway 71 at the location of the accident are clearly adequate and would accommodate a vehicle at 55 miles per hour for emergency purposes.
“The Highway Department has a duty to maintain reasonably safe highways for the protection of those people who could foreseeably be placed in danger by an unreasonably dangerous condition. It must make safe any defect of the system of which it has or should have knowledge. Jones vs. Louisiana Department of Highways, 338 So.2d, 338 (1976); Von-Cannon vs. State, Department of Highways, 306 So.2d 437 (1975); Devall vs. *1162 Morgan, 424 So.2d, 522 (1982). The department is liable for damages when it is shown that the hazardous condition that caused the injuries was patently or obviously dangerous to the reasonably careful driver if the department, with actual or constructive knowledge, failed to correct the defect within a reasonable time. Shively vs. Pickens, 346 So.2d, 1314 (1977); Laborde vs. Louisiana Department of Highways, 300 So.2d, 579 (1974).
“It is certainly desirable to have as many highways as possible improved to present recommended specifications but the failure of the state to update its highways to current standards does not establish the existence of a hazardous defect. Usry vs. Louisiana Department of Highways, 402 So.2d 240 (1981); Roberts vs. Winston Carriers, Inc., 304 So. 2d 818 (1974). It is well settled that the department is not an insurer of the safety of all motorists on the road, but has the obligation to maintain the roads and highways in a reasonably safe condition for a reasonably prudent driver. State Farm Mutual Automobile Insurance Company vs. Slaydon, 376 So.2d, 97 (1979); Wilson vs. State, Through Department of Highways, 364 So.2d, 1313 (1978); Devall vs. Morgan, 424 So.2d, 522 (1982).
“Counsel for plaintiff cited the cases of LeBlanc vs. State, 419 So.2d, 853 (1982), Parfait vs. Louisiana Department of Highways, 334 So.2d, 549 (1976) and Smith vs. State, Through Department of Transportation, 412 So.2d, 685 (1982) in support of the contention that the shoulder in the present case was defective and a cause of the accident. In each of these cases, the evidence showed clearly that there was an ‘edge drop-off of several inches from the travelled portion of the highway to the shoulder and that this caused a loss of control of the respective vehicles and ultimately an accident. No such factual basis exists in the present case and all three cases are clearly distinguishable from the present situation.
“In addition to testimony as to the size and condition of the highway, Dr. Blaschke reconstructed the accident. He testified by demonstration and calculation that Piazza could not have avoided the collision regardless of the width or slope of the shoulder. He carefully explained that based upon the speeds of the vehicles and the distance at which Piazza said he saw the Williams vehicle cross over into his lane (200 feet), that Piazza would have a maximum of 1.36 seconds to avoid the collision and that it would have been impossible to take preventive action within that time period. He was quite positive in stating that Piazza did not have adequate time to avoid the accident. His explanation was very clear and his demonstration was very convincing.
“Without detailed discussion of the testimony and other evidence presented at the trial, for the reasons set forth above, the court makes the following findings of fact:
“1. U.S. Highway 71 at the location of the accident is reasonably safe and the shoulders on the highway did not constitute a hazardous defect;
“2. Even if the shoulders of the highway had been inadequate and thereby hazardous, the accident could not have been avoided by Piazza; and
“3. The sole cause of the accident was the negligence of Tammy L. Williams.”
Plaintiffs argue that the trial court erred by ignoring the factual evidence and relying on the opinion of the State’s expert. We find no error. The trial judge’s reasons for judgment reflect that he considered all the evidence and ignored none. The trial judge was obviously impressed with Blaschke, DOTD’s expert, and relied to a great extent on his opinion as to how the accident happened. However, this is what trial courts are obligated to do. Trial courts must evaluate conflicting testimony and make factual findings. The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be dis *1163 turbed upon review. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
After a thorough review of the evidence in the record, we cannot say that these factual findings. by the trial judge are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). DOTD is not responsible for the fundamental reason that the condition of the shoulder was not a cause-in-fact of the accident. Even if the shoulder had had all the dimensions and characteristics the appellants argue it should have had, the accident would still have happened.
We affirm the judgment of the trial court at the costs of plaintiff-appellant.
AFFIRMED.